**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ILEVU YAKUBOV, | Civil Case No.: 1:24-cv-05328 |
| Plaintiff, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| vs. | |
| EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION LLC, and NISSAN MOTOR ACCEPTANCE COMPANY LLC. | |
| Defendants. | |

Plaintiff Ilevu Yakubov ("Plaintiff"), by and through the undersigned counsel, brings this action on an individual basis, against defendants Equifax Information Services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); Trans Union LLC ("Trans Union") (collectively, the "CRA Defendants"); and Nissan Motor Acceptance Company LLC ("Nissan"); (the CRA Defendants and Nissan are referred to collectively as "Defendants"), and states as follows:

## INTRODUCTION

1.      The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2. Unfortunately, this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the CRA Defendants acknowledge this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

3. The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4. These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5. Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers. *See* 15 U.S.C. § 1681(a)(1).

6. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes. *See Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) (quoting 116 Cong. Rec. 36570 (1970)).

7. The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period

beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

8.      In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S. C. § 1681(a)(4).

9.      The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

10.     Plaintiff's claims arise out of the CRA Defendants 'blatantly inaccurate credit reporting, wherein the CRA Defendants reported to Plaintiff's potential creditors that Plaintiff had failed to make a timely payment on his auto lease obligation.

11.     Accordingly, Plaintiff brings claims against the CRA Defendants for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports, in violation of 15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiff's credit file, in violation of 15 U.S.C. § 1681i.

12.     Plaintiff also brings a claim against Defendant Nissan for failing to fully and properly reinvestigate Plaintiff's disputes and review all relevant information provided by Plaintiff and the CRA Defendants, in violation of 15 U.S.C. § 1681s-2(b)(1).

13.     As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from Defendants for their willful and/or negligent violations of the FCRA.

## PARTIES

14.     Plaintiff is a natural person residing in Oakland Gardens, New York and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

15.     Defendant Equifax is a limited liability company with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309, and is authorized to do business in the State of New York, including within this District. Equifax can be served through its registered agent Corporation Service Company located at 2 Sun Court, Suite 400 Peachtree Corners, Georgia 30092.

16.     Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

17.     Defendant Experian is a corporation with a principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626, and is authorized to do business in the State of New York, including within this District. Experian can be served through its registered agent C T Corporation System located at 330 N Brand Blvd, Glendale, CA 91203.

18.     Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating

information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

19. Defendant Trans Union LLC is a limited liability company with a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661, and is authorized to do business in the State of New York, including within this District. Trans Union can be served through its registered agent Illinois Corporation Service Company located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

20. Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

21. Defendant Nissan Motor Acceptance Company LLC ("Nissan") is an automobile manufacturer with a principal place of business located at One Nissan Way, Franklin, Tennessee 37067, and is authorized to do business in the State of New York, including within this District. Nissan can be served through its registered agent Corporation Service Company located at 80 State Street, Albany, NY 12207.

22. Nissan is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## JURISDICTION AND VENUE

23. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS

### Summary of the Fair Credit Reporting Act

25.     The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

26.     The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

27.     Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 U.S.C. § 1681(b).

28.     To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

29.     The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

### Overview of the Credit Reporting Industry

30.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting.  Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

31.     The CRA Defendants sell millions of consumer reports (often called "credit reports" or "reports") per day, and also sell credit scores.

32.     Pursuant to 15 U.S.C. § 1681e(b), consumer reporting agencies, like the CRA Defendants, are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

33.     Pursuant to 15 U.S.C. §§ 1681b and 1681e(a), consumer reporting agencies, like the CRA Defendants, must maintain reasonable procedures to assure that consumer reports are sold only for legitimate "permissible purposes."

34.     The CRA Defendants' consumer reports generally contain the following information:

(a)     <u>Header/Identifying Information</u>: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers;

(b)     <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status;

(c)     <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and,

(d)    Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

35.    The CRA Defendants obtain consumer information from various sources.  Some consumer information is sent directly to the CRA by furnishers.

36.    The majority of institutions that offer financial services (*e.g.*, banks, creditors, and lenders) rely upon consumer reports from CRAs to make lending decisions.

37.    Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in the CRA Defendants' consumer reports.

38.    The information the CRA Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

39.    FICO Scores are calculated using information contained in the CRA Defendants' consumer reports.

40.    The CRA Defendants know that FICO and other third-party algorithms (as well as the algorithms owned by the CRA Defendants) use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

41.    The CRA Defendants know that lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

42.    DTI compares the total amount a consumer owes to the total amount a consumer earns.

43.     The higher the amount of reported debt that a consumer has, or appears to have, or is rather *reported* to have, the less favorable the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms. Rather, if offered credit at all, consumers will be offered less credit and at higher interest rates.

44.     The CRA Defendants routinely report inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by §1681e(b) of the FCRA.

45.     The CRA Defendants fail to employ reasonable procedures to assure the maximum possible accuracy of the information that they report about consumers, including but not limited to, account balances, account statuses, payment histories, and payment statuses.

46.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau Complaints against the CRA Defendants for their inaccurate credit reporting.

47.     Thus, the CRA Defendants are on continued notice of their respective inadequate reporting procedures.  Specifically, the CRA Defendants are on notice that their inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

48.     The CRA Defendants have received and documented many disputes from consumers complaining that CRA Defendants reported inaccurate information about them.

**How CRAs Process Consumer Credit Report Disputes**

49.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

50.     The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to

respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

51.     That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro 2 Format" or "Metro 2."

52.     It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

53.     Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

54.     Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

55.     The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

56.     These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

57.     Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

58.     Data furnishers, like Defendant Nissan, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed

credit account information is accurate and/or belongs to the disputing consumer. *See* 15 U.S.C. § 1681s-2(b).

59.     Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**Plaintiff Leases a Nissan Vehicle through Auto Plug**

60.     For the past six years, Plaintiff has leased and purchased vehicles through Auto Plug, Inc. ("Auto Plug"), a concierge automobile leasing and purchasing service.

61.     Auto Plug handles the majority of the administrative tasks related to purchasing or leasing a vehicle, one of which is setting up auto payments for customers.

62.     On May 18, 2023, Plaintiff entered into an agreement to lease a vehicle from Nissan-Infiniti through Auto Plug.

63.     Plaintiff made an initial down payment for the vehicle, which included taxes, fees and the first monthly payment.

64.     Plaintiff directed Auto Plug to set up auto-pay for the remaining monthly payments.

65.     Plaintiff reasonably expected and believed that Auto Plug had successfully and dutifully completed all administrative tasks relating to the lease, including the auto-pay setup, as it had done in the past.

**Defendants Report that Plaintiff is Delinquent on his Payment**

66.     Unbeknownst to Plaintiff, Auto Plug failed to set up the automatic payments for the lease, as it had been directed to do.

67.     Plaintiff was subsequently notified that a 30-day delinquency was added to his Nissan-Infinity account for the month of July 2023.

11

68.     The inclusion of a derogatory mark on Plaintiff's Nissan-Infinity account caused Plaintiff's credit score to plummet.

69.     Plaintiff was confused and distressed by this information because he believed that Auto Plug had set up automatic payments for the lease.

70.     Plaintiff immediately contacted Auto Plug to inquire about the situation and why he was being reported as 30-days late on his payment obligation.

71.     After reviewing the file, Auto Plug admitted that it had failed to set up the automatic payments and would correct the administrative oversight immediately.

72.     To avoid any further negative and/or derogatory reporting, Plaintiff immediately made the necessary payment to his Nissan-Infiniti Account.

73.     On or about November 7, 2023, Plaintiff applied to purchase another vehicle through Ally Financial. However, Plaintiff was offered a higher interest rate due to his significantly decreased credit score.

**Plaintiff's Dispute to the CRA Defendants Regarding the Inaccurate Credit Reporting**

74.     On or about February 5, 2024, extremely shocked, surprised, and embarrassed at the CRA Defendants' inaccurate reporting, Plaintiff disputed the 30-day delinquency on the Nissan-Infinity account with each of the CRA Defendants.

75.     In each dispute letter, Plaintiff explained that the 30-day delinquency was inaccurate because it was caused by an administrative failure.

76.     Further, to support his dispute, Plaintiff enclosed a notarized letter from Auto Plug taking responsibility for their administrative error and the late payment was not in any way due to Plaintiff's actions.

77.     Plaintiff requested that Equifax, Experian, and Trans Union reinvestigate the disputed information, correct the reporting, and for each to send him a corrected copy of his credit report.

**Defendant Equifax's Unreasonable Dispute Reinvestigation**

78.     Upon information and belief, Equifax sent Defendant Nissan an automated credit dispute verification ("ACDV") pursuant to Plaintiff's February 2024 dispute to Equifax.

79.     On or about February 29, 2024, Defendant Equifax responded to Plaintiff's dispute indicating to Plaintiff that the late notation pertaining to his Account with Defendant Nissan was not removed.

80.     Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

81.     Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's February 2024 dispute.

82.     Thereafter, Defendant Equifax failed to correct or delete the 30-day late notation appearing in Plaintiff's credit file.

83.     Equifax failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered August or September 2022, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Experian's Unreasonable Dispute Reinvestigation**

84.     Upon information and belief, Experian sent Defendant Nissan an automated credit dispute verification ("ACDV") pursuant to Plaintiff's February 2024 dispute to Experian.

85.     Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

86.     Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's February 2024 dispute.

87.     Thereafter, Defendant Experian failed to correct or delete the 30-day late notation appearing in Plaintiff's credit file.

88.     Experian failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered February 2024, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Trans Union's Unreasonable Dispute Reinvestigation**

89.     Upon information and belief, Trans Union sent Defendant Nissan an automated credit dispute verification ("ACDV") pursuant to Plaintiff's February 2024 dispute to Trans Union.

90.     Upon information and belief, Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

91.     Upon information and belief, Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's February 2024 dispute.

92.     Thereafter, Defendant Trans Union failed to correct or delete the 30-day late notation appearing in Plaintiff's credit file.

93.     Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered February 2024, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Nissan's Unreasonable Dispute Reinvestigation**

94.     Upon information and belief, in or around February 2024, Defendant Nissan received Defendant Equifax's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

95.     Upon information and belief, Defendant Nissan failed to review all relevant information provided by Defendant Equifax regarding Plaintiff's dispute tendered in or around February 2024.

96.     Upon information and belief, Defendant Nissan verified the disputed information as accurate to Defendant Equifax in or around February 2024.

97.     Upon information and belief, in or around February 2024, Defendant Nissan received Defendant Experian's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

98.     Upon information and belief, Defendant Nissan failed to review all relevant information provided by Defendant Experian regarding Plaintiff's dispute tendered in or around February 2024.

99.     Upon information and belief, in or around February 2024, Defendant Nissan verified the disputed information as accurate to Defendant Experian.

100.     Upon information and belief, in or around February 2024, Defendant Nissan received Defendant Trans Union's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

101.     Upon information and belief, Defendant Nissan failed to review all relevant information provided by Defendant Trans Union regarding Plaintiff's dispute tendered in or around February 2024.

102.   Upon information and belief, in or around February 2024, Defendant Nissan verified the disputed information as accurate to Defendant Trans Union.

103.   Defendant Nissan violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

104.   Plaintiff reasonably believes that Defendant Nissan continued to report the inaccurate 30-day delinquency on his account for July 2023.

105.   Plaintiff reasonably believes that the CRA Defendants continue to publish that Plaintiff was 30-days late on a payment obligation owed to Defendant Nissan for July 2023.

106.   As a result of the inaccurate 30-days late notation, and despite Plaintiff's disputes, the Defendants made it difficult for Plaintiff to continue to obtain credit.

107.   Further, Plaintiff is deterred from obtaining a mortgage in fear of being given a higher interest rate due to his significantly decreased credit score.

108.   At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

109.   At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

110.   As a standard practice, the CRA Defendants do not conduct independent investigations in response to consumer disputes.  Instead, they merely parrot the response of the credit furnisher, despite numerous court decisions admonishing this practice.  *See Cushman v.*

*Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

111.    The CRA Defendants are aware of the shortcomings of their procedures and intentionally choose not to comply with the FCRA to lower their costs.  Accordingly, the CRA Defendants' violations of the FCRA are willful.

112.    As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

**CLAIMS FOR RELIEF**
**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to**
**Assure Maximum Possible Accuracy**
**(Against the CRA Defendants)**

113.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

114.    The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

115.    Defendants Equifax, Experian, and Trans Union prepared patently false consumer reports concerning Plaintiff.

116.    Defendants Equifax, Experian, and Trans Union readily sold such false reports and thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

117.    Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

118.    Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

119.    Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

120.    As a result of Defendants' Equifax, Experian, and Trans Union conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

121.    Defendants Equifax, Experian, and Trans Union's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

122.    Plaintiff is entitled to recover attorneys' fees and costs from Defendants Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (Against the CRA Defendants)

123.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

124.    The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1).  The Act imposed a 30-day time limit for the completion of such an investigation.  *Id*.

125.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681i(a)(5)(A).

126.    Plaintiff disputed the inaccurate information with Equifax, Experian, and Trans Union and requested that they correct and/or delete a specific item in his credit file that is patently inaccurate, misleading, and highly damaging to him, namely, the 30-days late notation reported about his payment history for July 2023, in relation to Plaintiff's auto lease with Defendant Nissan.

127.    In response to Plaintiff's dispute, Equifax failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

128.     In response to Plaintiff's dispute, Experian failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

129.     In response to Plaintiff's dispute, Trans Union failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

130.     The CRA Defendants violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

131.     As a result of the CRA Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

132.     The CRA Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

133.    Plaintiff is entitled to recover attorneys' fees and costs from Defendants Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III**
**15 U.S.C. § 1681s-2(b)**
**Failure to Investigate and Correct the Reporting**
**(Against Defendant Nissan)**

134.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

135.    Defendant Nissan furnished the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union.

136.    Defendant Nissan violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute, or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union; and, by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union.

137.    As a result of Defendant Nissan's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

138.     Defendant Nissan's conduct, action, and inaction were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

139.     Plaintiff is entitled to recover attorneys' fees and costs from Defendant Nissan in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i.     Determining that Defendants negligently and/or willfully violated the FCRA;

ii.     Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.     Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.     Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: July 30, 2024

*/s/ Moshe O. Boroosan*
Moshe O. Boroosan, Bar No. 5429915
CONSUMER ATTORNEYS
1318 Avenue J, 2nd Floor,
Brooklyn, NY 11230
T: (718) 887-2926
F: (718) 715-1750
Email: mboroosan@consumerattorneys.com

*Attorney for Plaintiff*
*Ilevu Yakubov*